David A. Randall (SBN 156722)
dave@orbitip.com
Paul G. Novak (SBN 261388)
paul@orbitip.com
**ORBIT IP, LLP**
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.: (310) 887-1333
Fax: (310) 887-1334

Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
**ORBIT IP, LLP**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Tel.: (310) 887-1333
Fax: (310) 887-1334

*Attorneys for Plaintiff,*
*Perceptix Technologies LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PERCEPTIX TECHNOLOGIES LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> META PLATFORMS, INC., a Delaware corporation, <br><br> Defendant. | **Case No.:**  8:25-cv-02731 <br><br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Perceptix Technologies LLC ("Perceptix" or "Plaintiff"), by way of this Complaint against Meta Platforms, Inc. ("Meta" or "Defendant"), alleges as follows:

## NATURE OF THE CASE

1.    Perceptix brings this action against Meta for direct and indirect infringement of U.S. Patent No. 7,596,393 B2 ("the '393 Patent"), a copy of which is shown in **Exhibit A**. Meta has infringed and is infringing the '393 Patent by, *inter alia*, making, using, selling, and offering to sell in the United States, and importing into the United States, wearable communication devices, such as Meta Orion and Meta Ray-Ban Display devices (hereinafter collectively referred to as "Meta Wearable Communication Devices") that exploit the inventions claimed in the '393 Patent.

2.    This action arises under the Patent Laws of the United States, 35 U.S.C. §1, et seq., and seeks damages and other relief under 35 U.S.C. § 281, et seq. This action is necessary to stop Meta from illegally exploiting Perceptix's patent rights without its authorization and to recover for the harm Meta has caused Perceptix and its predecessor in interest.

## THE PARTIES

3.    Perceptix is a California limited liability company with its principal place of business at 26522 La Alameda Ave., Suite 360, Mission Viejo, CA 92691.

4.    Meta is a Delaware corporation with a number of offices throughout Northern and Southern California, including in this judicial district. Meta's principal place of business is located in Menlo Park, California.

**JURISDICTION AND VENUE**

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Meta because Meta is a corporation that maintains its principal place of business in the State of California and thus is a resident of California. In addition to its principal place of business, based on information and belief, Meta maintains offices and directs business activities from a number of offices within the state of California, including offices in Orange County and Los Angeles County within this judicial district.

7.      Meta is subject to this Court's general and specific personal jurisdiction because Meta has sufficient minimum contacts within the State of California, pursuant to due process and/or the California Long Arm Statute, because Meta has purposefully availed itself of the privileges of conducting business in the State of California, and this judicial district, and because Plaintiff's causes of action arise directly from Meta's business contacts and other activities within the State of California and this judicial district. Based on information and belief, Meta has marketed, distributed and used the infringing Meta Wearable Communication Devices throughout California, including in this judicial district and continues to do so.

8.      Further, on information and belief, Meta has imported and continues to import the infringing Meta Wearable Communication Devices into this judicial district from outside the United States and has induced and continues to induce

others to market, sell, and use the infringing Meta Wearable Communication Devices throughout California, including within this judicial district.

9.    Meta's business contacts and activities within California, and particularly this judicial district in relation to the infringing Meta Wearable Communication Devices are extensive and go well beyond those discussed above.

10.    For example, in 2014, Meta (then known as Facebook) acquired Oculus VR, Inc. ("Oculus"), which was headquartered in Irvine, California.

11.    On information and belief, Meta later reorganized Oculus under its Reality Labs division, which continues to focus on virtual and augmented reality technologies. Meta has a continuous and systematic presence in this judicial district through Reality Labs.

12.    Meta's job postings for positions in Los Angeles demonstrate its continued active presence in this judicial district in relation to the accused Meta Wearable Communication Devices. For example, Meta has posted an opening for a "Product Design Prototyper" position located in Los Angeles, California, accessible at https://www.metacareers.com/jobs/412506247949277. In its relevant part, the job posting reads: "As a Product Design Prototyper on the Reality Labs team, you will be working on the cutting edge of Virtual and Augmented Reality experiences. With our team, you will explore, prototype, and build experiences that define the future of how people interact with wearable technology. Join a world-class team experimenting with bold ideas in areas including optics, haptics, tracking, displays, computer vision, user experience, audio, perceptual psychology, and generative AI. Work alongside expert Scientists, Mechanical Engineers, Electrical Engineers and

Software Engineers to create the technology that makes AR/VR pervasive and universal. Join the adventure of a lifetime as we make science fiction real and change the world. You'll be responsible for researching, designing and prototyping interactions for RL. You'll work closely with engineers, designers, and researchers at Reality Labs."

13.    Another example of a job posting related to the accused Meta Wearable Communication Devices in Los Angeles is titled "Creative Director" and is accessible at https://www.metacareers.com/jobs/1219686006317218. In its relevant part, the job posting reads:  "We're seeking a Creative Director for our Wearables team who can make innovative technology tangible and desirable for consumers. You'll bring our brand promise to life by blending artistic vision with strategic thinking, leading teams and partners, and overseeing projects from concept to completion for a global audience."

14.    As yet another example of Meta's job postings for positions in Los Angeles in relation to the accused Meta Wearable Communication Devices is a job posting for a "Software Engineer, Realtime Engine Technology – Reality Labs" accessible at https://www.metacareers.com/jobs/8077528815704669/. The job description, which is copied below, outlines some of the core activities Meta conducts in this judicial district related to the accused Meta Wearable Communication Devices, including:

> At Meta, we're building innovative products that make it easier for people to connect with each other and enjoy immersive experiences. Our team of world-class experts is developing and shipping products at the intersection of hardware, software, and content, pushing the future of computing platforms and redefining

the way people work, play, and connect. As a Realtime Engine Technology engineer, you'll play a key role in designing and developing real-time interactive software that powers our immersive experiences, enabling seamless and intuitive interactions between users and virtual environments. By joining our team, you'll be at the heart of change and the frontier of what's to come, helping to define the metaverse and shape the future of technology.

15.    The job responsibilities demonstrate Meta's purposeful direction of activities toward this judicial district:

- Develop efficient and reusable systems that drive complex real-time interactive software

- Build technologies that empower developers to create compelling experiences

- Optimize and debug real-time systems to ensure smooth performance

- Set a high quality bar to make our technology easy and delightful for developers to use

- Engage in depth collaboration with partner teams to drive successful product outcomes

16.    Still another example of a Meta job posting related to the accused Meta Wearable Communication Devices in Los Angeles is a job posting titled "Integrated Marketing Manager, Wearables " and is accessible at https://www.metacareers.com/jobs/504864572715475. In its relevant part the job posting requires "[e]xperience in consumer product categories and brands such as consumer technology, wearables, Augmented Reality/Virtual Reality technologies."

17.     In view of the foregoing, the exercise of jurisdiction over Meta would not offend traditional notions of fair play and substantial justice.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because (i) Meta resides in this judicial district for venue purposes, and (ii) on information and belief, Meta has committed acts of patent infringement in this judicial district and has a regular and established places of business in this judicial district, including at its Reality Labs office in this judicial district.

## FACTUAL BACKGROUND

19.     The '393 Patent was duly and legally issued to the Electronics and Telecommunications Research Institute ("ETRI") by the United States Patent and Trademark Office on September 29, 2009, and is entitled "Wearable Mobile Phone Using EMG and Controlling Method Thereof." The '393 Patent is based on a U.S. Patent Application No. 11/132,233 that was filed on May 19, 2005, and which claims priority to a Korean Patent Application No. KR10-2004-0101875, filed on December 6, 2004. Plaintiff Perceptix is the exclusive licensee of the '393 Patent. A true and correct copy of the '393 Patent is attached as **Exhibit A**.

20.     The '393 Patent was granted to ETRI inventors Joon Young Jung, Yun Kyung Park, and Jenn Woo Lee. ETRI is the national leader in Korea in the research and development of information technologies. Since its inception in 1976, ETRI has developed new technologies in DRAM computer memory, CDMA and 4G LTE cellular phone communications, large-scale computer storage, LCD / touchscreen display technology, computers, headsets and wearable communication devices, which is the technology at issue in this case.

21.    ETRI employs over 2,000 research/technical staff, of whom over 90% hold a post-graduate degree and about 50% have earned a doctoral degree in their technological field. Over the last five years, ETRI has applied for about 17,000 patents, has contributed to over 8,000 proposals that have been adopted by international and domestic standard organizations, and has published over 1,200 articles in peer-reviewed technology publications.

22.    ETRI's leadership in patented new and innovative technologies has also been demonstrated by ETRI's multi-year No. 1 ranking among Top Local Innovation Systems, as ranked by IpIQ's *Innovation Anchor Scorecard*. ETRI was ranked above Massachusetts Institute of Technology ("MIT") (No. 2), University of California (No. 3), and Stanford (No. 4), as well as the U.S. Department of Energy (No. 5) and California Institute of Technology (No. 8).

23.    Among other innovations, the '393 Patent describes and, as reflected in independent claim 1, claims a unique and innovative wearable mobile phone using electromyography ("EMG") that includes (1) an EMG measuring unit having a plurality of EMG measuring sensors for detecting the EMG changed by hand motion of a user, and made in a ring shape to be worn on the wrist of the user; (2) an EMG transferring unit connected to the EMG measuring unit for transferring the EMG measured by the EMG measuring unit; (3) an EMG determining unit mounted to one side of the EMG transferring unit for receiving the EMG from the EMG transferring unit to determine the hand motion and extract an input signal for the mobile phone corresponding to the hand motion; and (4) a mobile phone functioning unit receiving

COMPLAINT FOR PATENT INFRINGEMENT

the input signal from the EMG determining unit for functioning the mobile function and having an antenna and a sound transferring device.

24.    Meta has infringed and is infringing the '393 Patent by making, using, distributing in the United States, and/or importing into the United States, Meta Wearable Communication Devices that infringe one or more claims of the '393 Patent. For example, as shown in the claim charts attached as **Exhibit B**, at least Meta Orion — as well as any wearable communication devices made, used, sold, offered for sale, and/or imported by Meta having substantially the same construction and features as Meta Orion infringe at least claims 1, 2, 5, 6 and 9 of the '393 Patent. Further, as shown in the claim chart attached as **Exhibit C**, at least Meta Ray-Ban Display — as well as any wearable communication devices made, used, sold, offered for sale, and/or imported by Meta, including but not limited to other wearable communication devices, having substantially the same construction and features as the Meta Ray-Ban Display infringe at least claims 1, 2, 5, 6 and 9 of the '393 Patent.

25.    On September 25, 2024, at the Meta Connect 2024 conference, Meta's CEO, Mark Zuckerberg, introduced Meta Orion, announcing that "[b]eginning today at Connect, and continuing throughout the year, we're opening up access to our Orion product prototype for Meta employees and select external audiences so our development team can learn, iterate, and build towards our consumer AR glasses product line, which we plan to begin shipping in the near future."

26.    On information and belief, Meta's Reality Labs employed about 17,000 people in 2022. If even a fraction of those employees have used Meta Orion, Meta

has engaged in significant direct and indirect infringement of the asserted '393 Patent. Meta, on information and belief, either made the infringing products in the U.S. or imported them into the U.S.

27.    Since that announcement, Meta demonstrated its Orion augmented reality glasses to multiple journalists and technology influencers who used them as instructed by Meta employees and whose reviews have been published online, in print, or in videos uploaded to YouTube.

28.    For example, CNET reporter Scott Stein wrote "I spent about an hour demoing various experiences in Orion and talking to Meta's team" and described using hand motions to control Meta Orion. "A middle-finger pinch with my thumb with my hand up opens the app menu . . . and I can use my eyes to look at an app and tap my forefinger and thumb to open." He also described taking a phone call and sending instant messages using Meta Orion. "An incoming call, which I answer, comes from one of Meta's PR team outside, calling on her phone. I can see her video feed. I respond to a message that comes in from messenger, dictating with my voice." He also reported that Meta said when the Orion glasses are released, "expect a price close to a high-end phone or laptop."

29.    For another example, Dutch augmented reality expert, content creator, and YouTube influencer Nathaniel de Jong uploaded a video to YouTube of himself and others wearing and using Meta Orion, showing what they see through them. He describes how Meta Orion uses EMG to interpret hand gestures to use common smart phone apps. The video shows de Jong using hand movements to operate smart phone apps like phone calling, messenger, WhatsApp, and Instagram on Meta Orion.

30.     Even Nvidia's President, co-founder and CEO, Jensen Huang, can be seen on YouTube wearing Meta Orion glasses and endorsing their features and design, which he calls "a big deal." "The hand tracking is good, the brightness is good, the color contrast is good [and] the field of view is excellent."

31.     On September 17, 2025, at the Meta Connect 2025 conference, Meta's CEO, Mark Zuckerberg, introduced Meta Ray-Ban Display: "Today at Connect, Mark Zuckerberg debuted the next exciting evolution of AI glasses: the all-new Meta Ray-Ban Display and Meta Neural Band."[1] Meta Ray-Ban Display is available for purchase, for example, on Meta's shopping web site.[2] The Meta Ray Ban Displays together with the Meta Neural Band start at $799.

32.     On information and belief, Meta is projected to sell millions of units of Meta Ray-Ban Display per year over each of the next three years resulting in billions in sales.

33.     Meta's partner Essilor Luxottica is targeting approximately 10M units of production capacity per year by end of 2026 of the entire Ray-Ban Meta line. On information and belief, the Meta Ray-Ban Display will represent a growing share of

---

[1] https://www.meta.com/blog/meta-ray-ban-display-ai-glasses-connect-2025/?srsltid=AfmBOooV_o62cSs0JeG1Xjman4ep8Ozl30Yc8uqbb8CbH4qsE6KqWg6k

[2] https://www.meta.com/ai-glasses/shop-all/?utm_productname=display&utm_source=gg&utm_medium=pla&utm_campaign=22930927416&utm_term=&utm_content=&utm_ad=&utm_location=9051710&utm_location2=&utm_placement=&utm_device=c&utm_matchtype=&utm_feed=&utm_adposition=&utm_product=&ads_rl=9213737374&&gclsrc=aw.ds&gad_source=1&gad_campaignid=22936812686&gclid=Cj0KCQjwrc7GBhCfARIsAHGcW5VansxHOOwgN2Xm-mEQ7VNMo7cE6Uv-YFQrWQv1xN_Ha4FWg0Ugr4saAkLEEALw_wcB

the Meta Ray-Ban line up over time and over the one to two years represent approximately 50% or more of the entire Ray-Ban Meta line.

34.    As reflected in **Exhibit B** and **Exhibit C**, the inventions described and claimed in the '393 Patent go to the core of how Meta Wearable Communication Devices operate and, indeed, Meta Wearable Communication Devices, such as Meta Orion and Meta Ray-Ban Display, would not exist without exploiting the inventions described and claimed in the '393 Patent.

## COUNT I

### (Patent Infringement of the '393 Patent – 35 U.S.C. § 271)

35.    The foregoing paragraphs are incorporated by reference as if fully set forth in this paragraph.

36.    Plaintiff Perceptix is the exclusive licensee of the '393 Patent and owns the right to enforce the '393 Patent for causes of action arising thereunder, as well as those that have previously arisen thereunder, the right to pursue all remedies for infringement of the '393 Patent, and the right to recover any and all available damages for infringement of the '393 Patent, including the right to sue for and recover past damages.

37.    Meta has infringed and continues to infringe the '393 Patent under at least 35 U.S.C. § 271, literally and under the doctrine of equivalents, by making, using, selling and/or offering for sale, in the United States, and/or importing into the United States, without authorization at least the aforementioned Meta Wearable Communication Devices.  Meta has advertised and continues to advertise Meta Wearable Communication Devices, such as Meta Ray-Ban Display, on Meta's

various platforms, such as Instagram[3] and the Meta website located at https://www.meta.com/. Meta offers Meta Wearable Communication Devices, such as Meta Ray-Ban Display, for sale on Instagram, stating that:

> "You can order the Ray-Ban Meta Display glasses from various retailers, but there's a catch - you need to book a demo first. Here's what you need to know:
>
> The Meta Ray-Ban Display glasses are available for $799 at select stores, including Best Buy, LensCrafters, Sunglass Hut, and Ray-Ban stores. Verizon will also start carrying them soon. To purchase, you'll need to schedule a 20-minute demo appointment at one of these retail partners.
>
> You can book a demo appointment on the websites of Best Buy, LensCrafters, or Ray-Ban. Not all stores will have demos available, so check the scheduling tool to find a store near you with available appointments.
>
> Alternatively, you can also try visiting Meta Lab locations, including the Burlingame, California space, or pop-ups to demo and buy a pair."[4]

---

[3] See, e.g., https://www.instagram.com/reel/DQ6uVBLjpz1/?igsh=NjZiM2M3MzIxNA==; and https://www.instagram.com/reel/DPO-_K0Efcs/?igsh=NjZiM2M3MzIxNA==; and https://www.instagram.com/reel/DO13qm2EXkk/?igsh=NjZiM2M3MzIxNA==

[4] The quoted instructions appears on a dedicated Instagram page when a user enters "place order for Ray-Ban Meta Display" in the search box.

38.    Representative claim charts demonstrating how representative Meta Wearable Communication Devices satisfy each limitation of at least claims 1, 2, 5, 6, and 9 of the '393 Patent literally and/or under the doctrine of equivalents are attached as **Exhibit B** and **Exhibit C**.

39.    As reflected in **Exhibit B** and **Exhibit C**, in relation to independent claim 1 of the '393 Patent, the infringing Meta Wearable Communication Devices are wearable mobile phones using electromyography (EMG). While **Exhibit B** illustrates infringement by Meta Orion, other Meta Wearable Communication Devices, such as Meta Ray-Ban Display, also infringe the '393 Patent in the same manner as illustrated in **Exhibit C**.

40.    Meta Wearable Communication Devices comprise an EMG measuring unit having a plurality of EMG measuring sensors for detecting the EMG changed by the hand motion of a user, and are made in a ring shape to be worn on the wrist of a user, as recited in independent claim 1 of the '393 Patent.

41.    Meta Wearable Communication Devices further comprise an EMG transferring unit connected to the EMG measuring unit for transferring the EMG measured by the EMG measuring unit, as recited in independent claim 1 of the '393 Patent.

42.    Meta Wearable Communication Devices further comprise an EMG determining unit mounted to one side of the EMG transferring unit for receiving EMG from the EMG transferring unit to determine the hand motion and extract  an input signal for the mobile phone corresponding to the hand motion, as recited in independent claim 1 of the '393 Patent.

43.    Meta Wearable Communication Devices further comprise a mobile phone functioning unit receiving the input signal from the EMG determining unit for functioning the mobile function and having an antenna and a sound transferring device, as recited in independent claim 1 of the '393 Patent.

44.    Meta Wearable Communication Devices further comprise a display for displaying a result determined by the EMG determining unit or screen information related to the mobile phone functioning unit as recited in dependent claim 2 of the '393 Patent.

45.    Meta Wearable Communication Devices further comprise an EMG determining unit that extracts an input signal corresponding to a browser key from the hand motion of the user in which the user moves a thumb up and down, and left and right, as recited in dependent claim 5 of the '393 Patent.

46.    Meta Wearable Communication Devices also practice the method of controlling an input unit for a wearable mobile phone using EMG generated by hand motion of a user as set out in claim 6 of the '393 Patent.

47.    The Meta Wearable Communication Devices receive the generated EMG as required by step a of claim 6 of the '393 Patent.

48.    The Meta Wearable Communication Devices determine the hand motion of the user through the EMG to extract an input signal for the mobile phone corresponding to the hand motion as required by step b of claim 6 of the '393 Patent.

49.    Further, the Meta Wearable Communication Devices receive the input signal for the mobile phone to perform a mobile phone function as required by step c of claim 6 of the '393 Patent. In step b, the Meta Wearable Communication Devices

COMPLAINT FOR PATENT INFRINGEMENT

extract an input signal corresponding to a browser key from the hand motion of the user in which the user moves a thumb up and down, and left and right and thus also infringe claim 9 of the '393 Patent.

50.    **Exhibit B** and **Exhibit C** provide representative claim charts for claims 1, 2, 5, 6, and 9.

51.    In addition to directly infringing the claims of the '393 Patent, Meta indirectly infringes one or more claims of the '393 Patent. Meta's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c).

52.    Meta contributorily infringes the '393 Patent by supplying Meta Wearable Communication Devices to purchasers, employees and "select external audiences" for use in the United States because (i) Meta Wearable Communication Devices constitute a material part of the inventions claimed in the '393 Patent, (ii) Meta knows Meta Wearable Communication Devices to be especially made or especially adapted for use in an infringement of the '393 Patent, and (iii) Meta Wearable Communication Devices are not a staple article or commodity of commerce suitable for substantial non-infringing use.

53.    Meta also indirectly infringes the '393 Patent by, for example, inducing and encouraging others to directly infringe the '393 Patent. To that end, direct infringers of the '393 Patent include individuals and companies that make, import, use, sell, and/or offer to sell Meta Wearable Communication Devices in the United States.

54.    Meta's acts of inducing infringement also include its support of purchasers, testers, and researchers in using Meta Wearable Communication Devices. Such support includes, by way of example, providing fitting and demo services for Meta Wearable Communication Devices, and providing routine software and firmware updates.  Meta encourages prospective purchasers of Meta Wearable Communication Devices, such as Meta Ray-Ban Display, to schedule a demo prior to their purchase.[5] On at least Instagram and the Meta website located at https://www.meta.com/, Meta provides detailed instructions for prospective purchasers to book a demo prior to purchasing a Meta Ray-Ban Display. For example, on Instagram, Meta states:

> "You can order the Ray-Ban Meta Display glasses from various retailers, but there's a catch - you need to book a demo first. Here's what you need to know:
>
> The Meta Ray-Ban Display glasses are available for $799 at select stores, including Best Buy, LensCrafters, Sunglass Hut, and Ray-Ban stores.  Verizon will also start carrying them soon. To purchase, you'll need to schedule a 20-minute demo appointment at one of these retail partners.
>
> You can book a demo appointment on the websites of Best Buy, LensCrafters, or Ray-Ban. Not all stores will have demos available, so

---

[5] *See, e.g.,* https://www.meta.com/ai-glasses/meta-ray-ban-display/?srsltid=AfmBOoqT7iDigspX-pF3dKiwWvxV_c2WjIbrLjme6f04wkGnEPJXx5-1&utm_source=chatgpt.com

check the scheduling tool to find a store near you with available
appointments.

Alternatively, you can also try visiting Meta Lab locations, including
the Burlingame, California space, or pop-ups to demo and buy a pair."[6]

55.    When potential customers show up for their appointment, a trained
salesperson demonstrates the Meta Ray-Ban Display for the potential customer,
including how to properly secure the Meta Neural Band around the customer's wrist
so that EMG signals will be properly detected and communicated to the
corresponding Meta Ray-Ban Display glasses. The sales representative also provides
instruction to the customer on how to use the Meta Ray-Ban Display including how
to make proper hand motion using the Meta Neural Band to extract an input signal
corresponding to a browser key from the hand motion of the user in which the user
moves a thumb up and down, and left and right.

56.    The Meta software and firmware updates are crucial to ensuring the
long-term operability and compatibility of Meta Wearable Communication Devices
with evolving hardware and software ecosystems and thus such updates constitute
acts of active inducement in violation of 35 U.S.C. § 271(b).

57.    By way of further example, Meta's acts of inducing infringement
further include providing consumer-ready prototypes to journalists and volunteer
testers and explicitly instructing those users how to use Meta Wearable
Communication Devices in a manner that infringes the claims of the '393 Patent.
Scott Stein's article describes Meta employees showing him how to use Meta

---

[6] The quoted instructions appears on a dedicated Instagram page when a user
enters  "place order for Ray-Ban Meta Display" in the search box.

Wearable Communication Devices they provided him in order to experience their capabilities and features. Nathaniel de Jong also describes being on a call with a Meta employee he could "see" with the glasses as they demonstrated using Meta Wearable Communication Devices.

58.    By way of yet a further example, Meta's acts of inducing infringement further include selling the Meta Ray-Ban Display to customers and users and/or offering those customers and users access to the Meta Ray-Ban Display and explicitly instructing those customers and users—through online materials, promotional materials, written instructions, user's guides, in store demonstrations, etc.—how to use the infringing Meta Ray-Ban Display devices and/or in a manner that infringes the claims of the '393 Patent. This includes Meta's provision of web-based, phone-based, email-based, software-based, and/or literature-based promotion, support, and assistance (e.g., manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance) for utilizing the Meta Ray-Ban Display devices.

59.    As described below, Meta's acts of direct and/or indirect infringement of the '393 Patent have occurred with Meta's full knowledge of the '393 Patent, and also with Meta's full knowledge that Meta Wearable Communication Devices — when manufactured and/or used as directed by Meta—directly infringe one or more claims of the '393 Patent. In short, Meta has been well and fully aware that the making, using, selling, offering for sale, importing, and testing Meta Wearable Communication Devices constitutes infringement of one or more claims of the '393 Patent.

60.    Meta (f/k/a Facebook) itself had full knowledge of and disclosed the '393 Patent to the United States Patent and Trademark Office (USPTO) numerous times in prosecuting at least seventeen (17) U.S. patent applications filed by Meta, spanning eight years—from 2014 to 2022—to obtain patents for technology directed to Meta Wearable Communication Devices as detailed below.

61.    In each of the below-listed Meta U.S. Patent Applications, Meta itself disclosed the '393 Patent in Information Disclosure Statement (IDS) filings in the USPTO:

(1)    Meta U.S. Patent Application No. 14/461,044, filed on August 15, 2014, titled "Systems, Articles and Methods for Signal Routing in Wearable Electronic Devices that Detect Muscle Activity of a User Using a Set of Discrete and Separately Enclosed Pod Structures";

(2)    Meta U.S. Patent Application No. 15/659,072, filed on July 25, 2017, titled "Methods and Apparatus for Predicting Musculo-Skeletal Position Information Using Wearable Autonomous Sensors";

(3)    Meta U.S. Patent Application No. 15/882,858, filed on January 29, 2018, titled "Systems, Articles and Methods for Wearable Electronic Devices Employing Contact Sensors"

(4)    Meta U.S. Patent Application No. 15/974,430, filed on May 8, 2018, titled "Systems and Methods for Improved Speech Recognition Using Neuromuscular Information";

(5)    Meta U.S. Patent Application No. 15/974,454, filed on May 8, 2018, titled "Systems and Methods for Text Input Using Neuromuscular Information";

(6)    Meta U.S. Patent Application No. 16/165,806, filed on October 19, 2018, titled "Systems and Methods for Identifying Biological Structures Associated with Neuromuscular Source Signals";

(7)    Meta U.S. Patent Application No. 16/557,427, filed on August 30, 2019, titled "Camera-Guided Interpretation of Neuromuscular Signals";

(8)    Meta U.S. Patent Application No. 16/577,352, filed on September 20, 2019, titled "Neuromuscular Text Entry, Writing and Drawing in Augmented Reality Systems";

(9)    Meta U.S. Patent Application No. 17/297,449, filed on November 27, 2019, titled "Methods and Apparatus for Autocalibration of a Wearable Electrode Sensor System";

(10)    Meta U.S. Patent Application No. 16/785,680, filed on February 10, 2020, titled "Wearable Devices and Methods for Improved Speech Recognition";

(11)    Meta U.S. Patent Application No. 16/832,978, filed on March 27, 2020, titled "Electromagnetic Interference Reduction in Extended Reality Environments";

(12)   Meta U.S. Patent Application No. 16/833,307, filed on March 27, 2020, titled "Methods and Apparatus for Gesture Detection and Classification";

(13)   Meta U.S. Patent Application No. 17/010,689, filed on September 2, 2020, titled "Systems, Methods, and Interfaces for Performing Inputs Based on Neuromuscular Control"

(14)   Meta U.S. Patent Application No. 17/094,712, filed on November 10, 2020, titled "Systems and Methods for Contextualized Interactions with an Environment";

(15)   Meta U.S. Patent Application No. 17/469,537, filed on September 8, 2021, titled "Devices, Systems, and Methods for Controlling Computing Devices via Neuromuscular Signals of Users";

(16)   Meta U.S. Patent Application No. 17/576,815, filed on January 14, 2022, titled "Wearable Device Providing for Thumb-to-Finger-Based Input Gestures Detected Based on Neuromuscular Signals, and Systems and Methods of Use Thereof"; and

(17)   Meta U.S. Patent Application No. 17/979,735, filed on November 2, 2022, and titled "Systems, Articles, and Methods for Wearable Devices Having Secondary Power Sources in Links of a Band for Providing Secondary Power in Addition to a Primary Power Source."

62.     In addition, through its acquisition of CTRL-Labs Corporation (CTRL-Labs), which is now part of Meta, and the developer of the Meta Neural Band, Meta has acquired at least nine (12) U.S. patents that originally identified North Inc. f/k/a Thalmic Labs Inc. as the Applicant, and one (1) U.S. patent formerly that originally identified CTRL-Labs Corporation as the Applicant, in each of which the '393 Patent was either disclosed to or cited by the USPTO. On information and belief, as part of its customary due diligence in patent acquisition involving review of prosecution file history, Meta became fully aware of the repeated disclosures and citations of the '393 Patent for technology directed to Meta Wearable Communication Devices.  On information and belief, Meta also became fully aware of the repeated disclosures and citations of the '393 Patent through participation of personnel from the acquired CTRL-Labs in the development of the Meta Neural Band used in the Meta Wearable Communication Devices. These Meta-acquired patents are detailed below:

> (1)   U.S. Patent Application No. 14/155,107, filed on January 14, 2014, titled "Wearable Muscle Interface Systems, Devices and Methods that Interact with Content Displayed on an Electronic Display," issued to CTRL-Labs Corporation as U.S. Patent Number 10,528,135 on January 7, 2020, and acquired by Meta;

> (2)   U.S. Patent Application No. 14/186,878, filed on February 21, 2014, titled "Method and Apparatus for Analyzing Capacitive EMG and IMU Sensor Signals for

COMPLAINT FOR PATENT INFRINGEMENT

Gesture Control," issued to Thalmic Labs Inc. as U.S. Patent Number 9,299,248 on March 29, 2016, and acquired by Meta;

(3)   U.S. Patent Application No. 14/276,575, filed on May 13, 2014, titled "Systems, Articles and Methods for Wearable Electronic Devices that Accommodate Different User Forms," issued to North Inc. as U.S. Patent Number 10,152,082 on December 11, 2018, and acquired by Meta;

(4)   U.S. Patent Application No. 14/335,688, filed on July 18, 2014, titled "Systems, Articles and Methods for Strain Mitigation in Wearable Electronic Devices," issued to Thalmic Labs Inc. as U.S. Patent Number 9,408,316 on August 2, 2016, and acquired by Meta;

(5)   U.S. Patent Application No. 14/476,093, filed on September 3, 2014, titled "Systems, Articles, and Methods for Electromyography-Based Human-Electronics Interfaces," issued to Thalmic Labs Inc. as U.S. Patent Number 9,372,535 on June 21, 2016, and acquired by Meta;

(6)   U.S. Patent Application No. 14/494,274, filed on September 23, 2014, titled "Systems, Articles, and Methods for Gesture Identification in Wearable Electromyography Devices," issued to Thalmic Labs Inc. as U.S. Patent

1        Number 9,483,123 on November 1, 2016, and acquired by

2        Meta;

3     (7)   U.S. Patent Application No. 14/539,773, filed on

4        November 12, 2014, titled "Systems, Articles, and Methods

5        for Capacitive Electromyography Sensors," issued to

6        Thalmic Labs Inc. as U.S. Patent Number 10,042,422 on

7        August 7, 2018, and acquired by Meta;

8     (8)   U.S. Patent Application No. 14/553,657, filed on

9        November 25, 2014, and titled "Systems, Articles, and

10       Methods for Electromyography Sensors," issued to North

11       Inc. as U.S. Patent Number 10,188,309 on January 29, 2019,

12       and acquired by Meta;

13    (9)   U.S. Patent Application No. 14/567,826, filed on

14       December 11, 2014, titled "Systems, Articles, and Methods

15       for Gesture Identification in Wearable Electromyography

16       Devices," issued to Thalmic Labs Inc. as U.S. Patent

17       Number 9,367,139 on June 14, 2016, and acquired by Meta;

18    (10) U.S. Patent Application No. 14/621,044, filed on

19       February 12, 2015, titled "Systems, Articles, and Methods

20       for Elastic Electrical Cables and Wearable Electronic

21       Devices Employing Same," issued to Thalmic Labs Inc. as

22       U.S. Patent Number 9,600,030 on March 21, 2017, and

23       acquired by Meta;

24

(11) U.S. Patent Application No. 14/669,878, filed on March 26, 2015, titled "Systems, Devices, and Methods for Wearable Electronic Devices as State Machines," issued to North Inc. as U.S. Patent Number 10,199,008 on February 5, 2019, and acquired by Meta;

(12) U.S. Patent Application No. 14/737,081, filed on June 11, 2015, titled "Systems, Devices, and Methods for Gesture Identification," issued to Thalmic Labs Inc. as U.S. Patent Number 9,880,632 on January 30, 2018, and acquired by Meta; and

(13) U.S. Patent Application No. 15/133,091, filed on April 19, 2016, and titled "Systems, Methods, and Computer Program Products for Interacting with Electronically Displayed Presentation Materials," issued to Thalmic Labs Inc. as U.S. Patent Number 10,078,435 on September 18, 2018, and acquired by Meta.

63.    As detailed above, Meta has had knowledge of the '393 Patent since at least 2014 and knowledge that the '393 Patent was directly relevant or material to patentability of numerous patent applications filed by Meta and acquired by Meta through acquisition of the Meta Neural Band technology from CTRL-Labs. All of these patent applications relate to the technology used in the accused Meta Wearable Communication Devices.

64.     In addition, prior to filing this complaint, on or about October 21, 2025, Perceptix provided written notice to Meta regarding its infringement of the '393 Patent. Meta thus received additional advance notice of the '393 Patent and that the accused Meta Wearable Communication Devices and/or their use infringe one or more claims of the '393 Patent.

65.     Meta has continued to make, use, sell, offer for sale, and/or import into the United States Meta Wearable Communication Devices.  As of December 9, 2025, Meta has not provided any response to Perceptix's detailed written notice that Meta continues to infringe the '393 Patent by making, having made, using, selling, offering for sale, and/or importing into the United States Meta Wearable Communication Devices despite Meta's full knowledge of the '393 Patent since 2014.

66.     More specifically, Meta has not provided any legal or factual arguments for any purported belief that it does not continue to infringe the '393 Patent.  Since release of Meta Wearable Communication Devices in September 2025 and, more particularly, since October 21, 2025, Meta has continuously encouraged scheduling of demos of the Meta Ray-Ban Display glasses for the purpose of selling the glasses.[7]

67.     Upon information and belief, Meta has made and is continuing to make unlawful gains and profits from its infringement of the '393 Patent.

---

[7] *See, e.g.*, https://www.meta.com/ai-glasses/meta-ray-ban-display/?srsltid=AfmBOoqT7iDigspX-pF3dKiwWvxV_c2WjIbrLjme6f04wkGnEPJXx5-1&utm_source=chatgpt.com

68.     Defendant Meta's infringement has injured and continues to injure Plaintiff Perceptix, which is entitled to recover damages adequate to compensate it for the infringement, but in no event less than a reasonable royalty. Defendant Meta's infringement has caused monetary damages to Perceptix in an amount to be determined at trial.

69.     Meta's direct and indirect infringement of the '393 Patent has been and is now willful and intentional.

70.     Meta engaged in its infringing conduct with full knowledge of the '393 Patent's existence and with knowledge that Meta Wearable Communication Devices or/or their use infringed it, and that the importation, selling, offering to sell, making, and using of Meta Wearable Communication Devices constituted direct infringement.

71.     Meta's actions warrant the imposition of enhanced damages under 35 U.S.C. § 284. Moreover, because Meta's acts of patent infringement have been and are now willful and intentional, this case is exceptional and Perceptix is thus also entitled to recover its attorneys' fees, as well as the costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Perceptix asks the Court to enter judgment in its favor and against Meta and grant the following relief:

A.     A determination that Meta has infringed the '393 Patent.

B.     Awarding damages arising out of Meta's infringement of the '393 Patent to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof.

C.     As a consequence of Meta's willful infringement, trebling the foregoing damages award in accordance with 35 U.S.C. § 284.

D.     Awarding attorneys' fees to Plaintiff pursuant to 35 U.S.C. § 285 or as otherwise permitted by law.

E.     Any further relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Perceptix demands a trial by jury of all issues and claims which are so triable.


DATED: December 9, 2025             Respectfully submitted,

                                    ORBIT IP, LLP

                                    By:  /s/ *David A. Randall*
                                    David A. Randall (CA SBN 156722)
                                    Ehab M. Samuel (CA SBN 228296)

                                    *Attorneys for Plaintiff,*
                                    *Perceptix Technologies LLC.*